IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

LESIA WILCOX, :
:
    Plaintiff, :
:
  VS. : Civil Action File No.
: 5 : 09-CV-167 (MTT)
MICHAEL J. ASTRUE, :
Commissioner of Social Security, :
:
    Defendant. :

## RECOMMENDATION

The Plaintiff herein filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income benefits on September 15, 2005, alleging disability since August 23, 2005. The applications were denied initially and upon reconsideration, and the Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 17, 2007. In a decision dated June 29, 2007, the ALJ denied Plaintiff's claim. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making it the final decision of the Commissioner. The Plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted. This case is now ripe for review under section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by

substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ concluded that the Plaintiff had "severe" impairments of degenerative disc disease of the lumbar spine with stenosis; disc protrusion at C5-6 of the cervical spine; right rotator cuff tear; osteoarthritis of the right knee; status post fracture of the right ulna; and obesity. The ALJ found that Plaintiff retained the residual functional capacity to perform light work with lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing/walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday; she should never climb ladders, ropes or scaffolds; she should perform no more than occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, crawling, or reaching with the right upper extremity; and she should perform no more than frequent handling with the right upper extremity.

The medical evidence of record shows the following facts: Plaintiff was seen at the ER in May 2005 after being in an auto accident. (Tr.122-136). She had pain in her neck, back, and right shoulder and wrist, and muscle spasm in her neck with reduced range of motion. Her x-rays showed degenerative changes of the cervical spine. The impression was neck sprain and degenerative changes, and she was advised to seek follow-up treatment. (Tr. 124-25, 128-30). She was five feet, one inch tall and weighed 270 pounds. (Tr. 126). X-rays showed disc space narrowing at C4-5, C5-6, and C6-7 with anterior and posterior spurring, and the impression was "[c]ervical degenerative disc disease and moderate spurring. There is some foraminal narrowing noted at C4-C5 and C5-C6 and C6-C7." (Tr. 129, 289).

Harvey A. Jones, M.D. saw Plaintiff in June 2005 for neck, low back, right shoulder, and right wrist pain. (Tr. 166-69). She was obese. She had tenderness in the neck with muscle spasm and reduced range of motion, tenderness in the lumbosacral area with muscle spasm and positive straight leg raising on the right, and "[e]xamination of the neck and back is consistent with acute musculo-

3

ligamentous sprain with muscle spasm and reduced range of motion." (Tr. 167). She had tenderness in the right shoulder, but full range of motion, and tenderness in the right wrist. (Tr. 167-68). Dr. Jones assessed acute cervical sprain, lumbosacral sprain, right rotator cuff tendinitis, and contusion of the right wrist with navicular fracture needing to be ruled out. Dr. Jones prescribed physical therapy, Lortab, Naprosyn, and Flexeril. (Tr. 168-169, 163-165).

In August 2005 Plaintiff returned to Dr. Jones with improved neck and shoulder pain, continued intermittent wrist pain, and no improvement in her low back pain with the pain radiating down both legs. She said the pain was severe and prevented her from sleeping at times. She had tenderness in the neck with excellent range of motion, marked tenderness in the back with muscle spasm and greatly decreased range of motion, positive straight leg raising on the right, and minimal tenderness of the right shoulder and wrist. (Tr. 161-162). Dr. Jones assessed resolving cervical sprain with evidence of degenerative disc disease, lumbosacral sprain with possible herniated disc, right wrist sprain, and bilateral shoulder strain. He ordered imaging studies. (Tr. 162).

Plaintiff underwent MRIs and x-rays for neck, wrist, shoulder and back pain radiating to the legs. (Tr.137-144). X-rays of her lumbar spine revealed disc space narrowing at L5-S1 with osteophytes suggesting degenerative change. (Tr. 143, 160). An MRI showed findings suggesting desiccation at the L2, L3, L4, and L5 disc spaces, mild spondylosis at L2-3, minimal bulging at L3-4 with significant posterior element hypertrophy narrowing the posterior aspect of the canal and slightly narrowing the AP diameter as well as creating some mild central canal stenosis, mild spondylosis at L4-5, and central to left paracentral disc protrusion possibly effacing the left S1 nerve root. The impression was central to left paracentral disc protrusion at L5-S1 and multilevel spondylosis with some mild central canal stenosis at L3-4. (Tr. 141, 159).

Follow-up notes from Dr. Jones indicated that Plaintiff continued to complain of severe pain. She continued to have tenderness, muscle spasm, and reduced range of motion on exam. (Tr. 157). Dr. Jones assessed herniated disc at L5-S1 with multilevel spondylosis of the lumbar spine and lumbar spinal stenosis at L3-4, cervical sprain, bilateral shoulder strain, right wrist sprain, and mild vasomotor rhinitis and sinusitis. Dr. Jones referred Plaintiff to a neurosurgeon and ordered more physical therapy. (Tr. 158).

In September 2005 Dr. Jones noted continued "severe neck pain, right shoulder pain, right wrist pain, numbness in the right hand and persistent lower back pain going down into both legs." She could not afford neurosurgical consultation. (Tr. 155). Dr. Jones assessed persistent cervical sprain with possible herniated disc; persistent right wrist pain secondary to right wrist contusion; herniated L5-S1 disc; and multilevel lumbar spondylosis with mild central canal stenosis at L3-4. He wrote:

> She has been totally disabled ever since this accident and unable to return to her usual occupation with child care. She is unable to lift children because of injury to her dominant right upper extremity and also she is not able to stand or sit for long periods of time because of the back injury....
> This patient remains totally disabled due to her herniated lumbar disc and spinal stenosis with severe limitations of her lower back and also because of persistent problems with her right shoulder, possibly secondary to a severe rotator cuff tendinitis vs a partial rotator cuff tear.

(Tr. 155-56).

X-rays of Plaintiff's shoulder were negative, and x-rays of her right wrist showed "well corticated density off the ulna styloid, may represent acute fracture or old trauma." (Tr. 139, 153). MRI of her right shoulder revealed minimal AC joint bony spurring and a rotator cuff tear with small joint effusion. Cervical MRI revealed mild reversal of the cervical curvature centered at C4-5; osteophyte and mild disc bulging at C4-5; central to right paracentral disc protrusion appearing to

flatten the cord on the right at C5-6; and minimal bony changes at C6-7. The radiologist's impression was right paracentral disc protrusion at C5-6 with some mild cord compression. (Tr. 138, 154).

Dr. Jones noted paresthesia in both hands with slight weakness in the right hand, slightly positive right cervical compression, and limited range of motion in the right shoulder in addition to the usual exam findings. (Tr. 150-151). Dr. Jones assessed, in addition to previous diagnoses, right paracentral disc protrusion at C5-6 with mild cord compression, rotator cuff tear of the right shoulder, and fracture of the right ulna styloid. Dr. Jones instructed Plaintiff to obtain a right wrist or forearm brace at the drugstore and to continue physical therapy.

In November Dr. Jones completed a range of motion form showing reduced range of motion in all planes in the neck and back, reduced straight leg raising bilaterally, reduced range of motion in the right shoulder, reduced dorsiflexion in the right wrist, and reduced internal and external rotation in both hips. (Tr. 147-148).

Jeffrey Fried, M.D., an orthopedic surgeon, examined Plaintiff in November 2005 and noted her multiple problems. He assessed right rotator cuff tendinitis and possible tear. He did not have access to Plaintiff's MRI. Dr. Fried advised Plaintiff to consider right shoulder arthroscopy if the neurosurgeon did not think her cervical disc protrusion was causing most of her pain. She could also try injections "to try to differentiate her shoulder pain from her cervical spine pain." In the meantime, Dr. Fried advised Plaintiff to do exercises to try to improve the shoulder's range of motion. (Tr. 179).

Neurosurgeon Joe Sam Robinson, M.D. also saw Plaintiff in November 2005. Her "history/review of systems [was] consistent with constipation, swelling of the feet, headaches, bilateral leg pain with

activity, neck pain, bilateral arm/shoulder/hand pain, [and] difficulty walking." He stated, "I will give this patient Medrol I.M. [intramuscular injection]. If her complaints do not resolve, then we will see about a cervical/lumbar myelogram and EMGs of the upper extremities." (Tr. 184).

Dr. Jones noted in December 2005 that Dr. Robinson was considering further testing and Dr. Fried was considering arthroscopy, but that "[n]one of these things can be done until she is able to obtain either Medicare or Medicaid." (Tr. 250). Dr. Jones continued to follow Plaintiff for the same symptoms and diagnoses of herniated disc at C5-6 with cord compression, paracentral disc protrusion at L5-S1, lumbar spinal stenosis at L3-4, multilevel spondylosis of the lumbar spine, rotator cuff tear of the right shoulder, and hypertension. (Tr. 247-251).

Plaintiff was seen at Taylor Regional Hospital in February 2006 for neck and back pain. (Tr. 186-191). She reported onset of extremely severe back pain radiating to both legs exacerbated by movement, and right shoulder pain. She was noted to be obese. She was given IV infusions of Nubain, Phenergan, and Toradol. (Tr. 187-190). The impression was musculoskeletal pain. (Tr. 191).

Howard Williams, M.D., a pain specialist, began treating Plaintiff in March 2006, noting Dr. Jones's findings and the previous test results. Plaintiff had lumbar paraspinal stiffness, tenderness in the lumbar spine, decreased cervical mobility with positive trigger points and tenderness, and diffuse tenderness in the right shoulder with decreased mobility. Dr. Williams started treatment with lumbar paravertebral injection including nerve block and trigger point injections, and therapy, and ordered more tests. (Tr. 283-284). A spinal ultrasound showed findings suggestive of soft tissue, nerve root and/or facet area fibrosis or inflammation of the L3, L4, S1, T11, T10, T9, T8, T7 levels involving erector spinae muscle group and possibly latissimus dorsi muscle. (Tr. 288). Plaintiff underwent a

nerve conduction study, which was "abnormal due to the right peroneal motor nerve being prolonged. Further needle EMG testing and clinical correlation is recommended to further evaluate this finding." (Tr. 282, 281, 285-287). Plaintiff underwent cervical, lumbar, and knee comparative muscle testing showing deficits. (Tr. 277-280). She underwent grip/pinch strength testing with a grip of 27.5 pounds on the right, and 32.5 pounds on the left, and pinch of 4.5 pounds on the right and 5 pounds on the left. (Tr. 275-276). Plaintiff's findings on lift strength evaluation were all ten pounds or less. (Tr. 273-274). Range of motion testing showed deficits in the cervical, thoracic, and lumbar spine. (Tr. 269-272).

Dr. Williams continued to administer weekly injections in May and June 2006. Plaintiff continued to exhibit trigger points, stiffness, and tenderness to palpation (Tr. 257-60) until the last visit on June 20, 2006, when she had only mild tenderness in the right shoulder and mild lumbar paraspinal stiffness. Dr. Williams advised Plaintiff to return on an as-needed basis. (Tr. 256).

Dr. Baggett saw Plaintiff later in March 2007 for increasing right knee pain, and noted she had significant arthritis. She had pain and crepitance with range of motion, moderate valgus deformity, and a 2+ effusion. The impression was progressive knee arthritis, and she was given a cortisone injection and advised to return if her symptoms worsened. (Tr. 226).

The Appeals Council received and considered additional evidence, showing that in June 2007 Plaintiff went to the Taylor Regional Hospital ER for pain in her right shoulder and arm, right knee, and lower back. She was given intravenous Toradol and another IV medication with an illegible name. Plaintiff returned to the Taylor Regional ER on October 20, 2007, after falling down steps, complaining of pain in her lower back, hip, right arm, wrist, and right shoulder. She was injected with Toradol and placed in a right upper extremity sling and right wrist immobilizer. Plaintiff

returned the next day, still in pain, and was given oral Lortab and a cervical collar. (Tr. 349-360).

*Failure to Develop the Record*

Plaintiff asserts that the ALJ should have obtained a functional opinion by ordering a consultative exam or re-contacting one of the examining physicians, because the ALJ's residual functional capacity (RFC) findings were not based upon a functional report from a treating or examining physician.

The determination of RFC is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect the ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183. The regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ, based on all the evidence in the record, not only the relevant medical evidence. See 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c). Relevant medical and other evidence includes not only medical assessments, but also medical reports from treating and examining sources, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The regulations state that a medical source statement regarding what a claimant can do, despite her limitations, is not required and the lack of one does not make the record incomplete. See 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6).

Additionally, the ALJ is only obligated to re-contact a physician if one of the following situations exists: the evidence is inadequate to determine whether or not Plaintiff is disabled; there is a conflict or ambiguity that must be resolved; or the report does not contain all the necessary information, or it does not appear to be based on medically acceptable clinical and laboratory

diagnostic techniques. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2006).

An ALJ may order a consultative exam or recontact a treating physician when the evidence is inadequate or insufficient to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1512(e), 404.1519a(b), 416.912(e), 416.919a(b).

As pointed out by the Commissioner, the record contains a report from a state non-examining physician who reviewed the record and opined, like the ALJ, that Plaintiff could perform light work-related activities with some postural and manipulative restrictions. (Tr. 171-72). Although the ALJ did not expressly discuss the state agency physician's findings, it is clear that the ALJ considered and relied upon other medical evidence in the record, including the reports of examining physicians[1], in determining Plaintiff's residual functional capacity.

The lack of a specific functional limitation report from a physician in this record does not invalidate the ALJ's findings. The ALJ specifically considered the whole record in making her findings, and the undersigned finds that the residual functional capacity specified by the ALJ was based upon substantial evidence.

*Treating Physician*

Plaintiff states that the ALJ improperly rejected the opinion of a treating physician, Dr. Jones, and failed to re-contact Dr. Jones in reference to any questions regarding Dr. Jones' opinions and treating records.

The regulations at 20 C.F.R. § 416.927(d) provide specific criteria for evaluating medical opinions from acceptable medical sources: (1) examining relationship; (2) treatment relationship; (3)

---

[1]The ALJ did assign little weight to the opinion of one of Plaintiff's treating physicians, Dr. Jones, which is more fully discussed herein.

supportability; (4) consistency; (5) specialization; and (6) other factors. Additionally, the Eleventh Circuit has held that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when the "(1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Lewis*, 125 F.3d at 1440). A "treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" *Crawford*, 363 F.3d at 1159 (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)).

The ALJ discussed Dr. Jones' opinions, and rejected them because they were inconsistent with the record as a whole, because Dr. Jones did not explain the basis for his disability opinions, and because Dr. Jones did not specialize in disorders of the spine (Tr. 20-22). The ALJ noted inconsistencies in the results of examinations given by Dr. Jones and the other treating specialists. Dr. Jones during one exam found Plaintiff had some loss of motor strength and sensation (Tr. 149); the ALJ found that those findings
were inconsistent with the notes taken by Dr. Joe Robinson, a neurosurgeon, and Dr. Howard Williams, III, Plaintiff's treating pain management physician (Tr. 20). Dr. Robinson found that Plaintiff had completely normal strength and sensation, and that her back was within normal limits (Tr. 184). The ALJ assigned Dr. Robinson's opinion, as opposed to Dr. Jones' opinion, significant weight because Dr. Robinson specialized in disorders of the spine. (Tr. 20, 192, 195). See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

The ALJ also noted that treatment records from Dr. Williams, Plaintiff's treating pain

management physician, showed that Plaintiff was treated with multiple epidural injections, massage, and ultrasound therapy, and after each treatment she reported that she was much more functional, that the treatment really helped, and that she was encouraged and doing much better. (Tr. 20).

The ALJ additionally gave greater weight to the opinion and findings of Dr. Jeffrey Fried regarding Plaintiff's wrist and shoulder problems. (Tr. 21, 149). The ALJ noted that Dr. Jeffrey A. Fried, who treated Plaintiff for her shoulder pain, indicated that she had almost normal range of motion and no instability in her right shoulder (Tr. 147, 179) and her strength was good (Tr. 179).

The ALJ also rejected Dr. Jones' opinions that Plaintiff was totally disabled or incapacitated because Dr. Jones' statements were cursory and he did not explain the basis for those conclusions (Tr. 22). The ALJ found the overall evidence showed that Plaintiff had no significant neurological defects and has responded very well to treatment. (Tr. 22).

Opinions that a plaintiff is disabled or incapacitated are legal determinations reserved exclusively for the Commissioner. See 20 C.F.R. §§ 404.1527(e), 416.927(e). A treating physician's opinion that a plaintiff is disabled or unable to work is not conclusive; the ALJ must make a disability determination based upon the medical findings and other evidence. *Bell v. Bowen*, 796 F.2d 1350 (11th Cir. 1990).

"Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. The ALJ offered numerous reasons for assigning less weight to the opinion of Dr. Jones, including assigning greater weight to the opinions of Plaintiff's treating specialists. Therefore, the ALJ's decision to discount the opinion of Dr. Jones was based upon substantial evidence.

*Credibility*

Plaintiff states that the ALJ erred in assessing her credibility and subjective complaints. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.

20 C.F.R. S 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553, 1560-1561 (11th Cir. 1995).

A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt*, supra at 1223; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility. "[D]isregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action. When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision." *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir.1986). The ALJ may consider the nature of a plaintiff's symptoms, the effectiveness of medication, a plaintiff's activities, and any conflicts between a plaintiff's statements and the rest

of the evidence. See 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

The ALJ found that Plaintiff met the pain threshold in that her impairments could reasonably cause her pain, but did not find her statements concerning the severity of her symptoms and their limiting effects entirely credible. (Tr. 20).

The decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to … subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p. *See also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (requiring the ALJ to articulate specific reasons for questioning a claimant's credibility).

The ALJ noted that Plaintiff often reported to Dr. Williams improvement with her pain management treatment and stated that the treatment had allowed her to be more functional (Tr. 20, 256-60, 262-67). At times, Plaintiff also reported improvement to Dr. Jones with respect to her shoulder and back pain (Tr. 161, 164). At the hearing, Plaintiff testified that she is "pain-free" when she takes pain pills (Tr. 318), and pain medication relieves her knee pain (Tr. 21, 321). Although Plaintiff claimed that the medications she took caused nausea and frequent vomiting (Tr. 327), the ALJ found that there is no indication from the record that she complained of such side effects to her physicians (Tr. 21, 122-289). Her medical records contain notations that her medications were causing no complications (Tr. 157, 161).

The ALJ noted gaps in treatment for her knee pain and her failure to follow the recommended treatment for her shoulder pain (Tr. 21). As to her knee pain, the ALJ reasoned that although she was first treated for her knee pain by Dr. Martin Baggett in October 2006 and was prescribed anti-inflammatory medication, she did not return for treatment again until March 2007, almost five

months later (Tr. 222, 226). As to her allegation that she suffered depression, the ALJ found no indication that she ever sought any out-patient treatment (Tr. 22, 122-289).

Again, the ALJ gave specific, well articulated reasons for finding that Plaintiff was less than fully credible in her complaints of disabling pain. Keeping in mind that the undersigned may not re-weigh the evidence, *see Bloodsworth*, 703 F.2d at 1239, the undersigned finds that the ALJ's decision to discount Plaintiff's credibility was based upon substantial evidence.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405 (g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Marc T. Treadwell, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 3rd day of September, 2010.

        S//Thomas Q. Langstaff
        THOMAS Q. LANGSTAFF
        UNITED STATES MAGISTRATE JUDGE

msd